**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Barbara Wright, as attorney-in-fact for Mary Wood,<br><br>        Plaintiff,<br><br>vs.<br><br>United States of America,<br><br>        Defendant. | No. CV 06-01788-PHX-NVW<br><br>**ORDER** |

Pending before the court is Defendant's Motion for Summary Judgment (Doc. #89).

**I. The Court Deems Admitted Each of the Government's 304 Paragraphs of Its Separate Statement of Facts Because Plaintiff Has Not Specifically Controverted Any of Them.**

LRCiv 56.1(b) requires any party opposing a motion for summary judgment to file a statement, separate from that party's memorandum of law, setting forth:

> (1) for each paragraph of the moving party's separate statement of facts, a correspondingly numbered paragraph indicating whether the party disputes the statement of fact set forth in that paragraph and a reference to the specific admissible portion of the record supporting the party's position if the fact is disputed; and (2) any additional facts that establish a genuine issue of material fact or otherwise preclude judgment in favor of the moving party. ... **Each numbered paragraph of the statement of facts set forth in the moving party's separate statement of facts shall, unless otherwise ordered, be deemed admitted for purposes of the motion for summary judgment if not specifically controverted by a correspondingly numbered paragraph in the opposing party's separate statement of facts.**

The Government's separate statement of facts consists of 45 pages with 304 separately numbered paragraphs of factual assertions. (Doc. #90.) Entirely disregarding LRCiv 56.1(b), Plaintiff Barbara Wright does not indicate whether she disputes any of the Government's 304 paragraphs. (Doc. #98.) Therefore, each of the 304 numbered paragraphs of the Government's separate statement of facts is deemed admitted for purposes of the motion for summary judgment.

Wright's statement of facts includes ten paragraphs of additional facts, which are referenced in Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment at pages 9-17 in subsections with headings stating genuine issues of material fact exist with regard to each of her five claims. (Doc. #99.) The Government, however, seeks summary judgment on the basis that Wright's expert on standard of care must be excluded and Wright cannot prove her case without such an expert. Wright's additional facts are not relevant to the issues raised by the pending summary judgment motion, *i.e.*, whether her expert meets A.R.S. § 12-2604 qualification criteria and whether her expert's opinion is admissible under Fed. R. Evid. 702.

**II.    Dr. McGuire's Affidavit Will Be Disregarded as Improper Extended Argument, Untimely or Duplicative Opinion, Unsupported Conclusion, and Impermissible Contradiction of Her Specific Deposition Testimony.**

LRCiv 7.2(e) provides that a response to a motion, including its supporting memorandum, shall not exceed 17 pages. Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment completely fills 17 pages, followed by the signature on page 18, and attaches an additional ten pages of argument and opinion as an exhibit titled "Affidavit of Barbara McGuire, M.D." (Doc. # 99, Exh. 1.) Because the deadline for expert disclosures and discovery is long past, any newly disclosed expert opinion is untimely. (Doc. #23.) The court, therefore, disregards paragraphs 4-19 of the Affidavit as overlength argument and untimely or duplicative expert opinion. (Doc. # 99, Exh. 1.)

The Affidavit also includes Dr. McGuire's conclusion without factual data that, during the year immediately preceding Wood's October 2004 hospital admission, she devoted the

- 2 -

1  majority of her professional time to the active clinical practice of internal medicine.  (Doc.
2  #99, Exh. 1, ¶ 3.)  Other than stating she provided medical care to New Mexico inmates, she
3  does not explain how that activity constituted the majority of her professional time for a year.
4  The court is not required to find a genuine issue of material fact based on an affidavit's
5  "conclusory allegations unsupported by factual data."  *See Hansen v. United States*, 7 F.3d
6  137, 138 (9th Cir. 1993).  Therefore, the court does not consider as evidence Dr. McGuire's
7  unsupported conclusion that she devoted the majority of her professional time to the active
8  clinical practice of internal medicine during the year preceding October 2004.

9        Moreover, a party cannot create an issue of fact by an affidavit contradicting prior
10  deposition testimony if the affidavit is a sham produced merely to avoid summary judgment.
11  *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991).  In her Affidavit, Dr.
12  McGuire states she devoted the majority of her professional time during the year preceding
13  October 2004 to the active clinical practice of internal medicine and her activities consisted
14  of the supervision and delivery of medical care to inmates in the New Mexico prison system.
15  (Doc. #99, Exh. 1, ¶ 3.)  In her deposition, however, Dr. McGuire said she left her position
16  providing care to New Mexico prison inmates in May or June 2004.  (Doc. #92, Exh. 29,
17  p.11.)  She also testified that when she did provide care to inmates, she provided patient care
18  only about one day per week.  (*Id.* at p.10.)  The court finds that paragraph 3 of the Affidavit
19  flatly contradicts earlier deposition testimony in an attempt to manufacture an issue of fact
20  and avoid summary judgment and, therefore, disregards it.

21  **III.   Background**

22        Plaintiff Barbara Wright, as the attorney-in-fact for her sister Mary Wood, brought
23  this action against the United States of America pursuant to the Federal Tort Claims Act, 28
24  U.S.C. §§ 2671, *et seq.* ("FTCA").  On October 4, 2004, Wood presented to the Carl T.
25  Hayden Veterans Affairs Medial Center in Phoenix, Arizona ("Hospital"), with complaints
26  of persistent headache and progressive weakness.  Wright alleges that Wood's admission to
27  the Hospital precipitated a series of negligent acts by Hospital physicians and nurses,
28  including negligent catheterization (Count 1), negligent fluid management (Count 2),

- 3 -

1  negligent intubation (Count 3), and negligent failure to institute proper therapy (Count 4).
2  Wright's fifth claim alleges that the Hospital failed to properly supervise medical residents
3  and interns who cared for Wood during her period of hospitalization.  Wright alleges Wood
4  suffered physical pain, extreme mental anguish, loss of future earning capacity, permanent
5  physical and mental injury, and loss of enjoyment of life as a result of the Hospital's acts.

6       Wright identified as her expert witness on liability Barbara McGuire, M.D., a licensed
7  physician who is board certified in the specialty of internal medicine. (Doc. #99, Exh. 1, ¶ 2;
8  Doc. #92, Exh. 36, p.1.)  Dr. McGuire testified in deposition that she was employed from
9  2003 until May or June 2004 as a chief medical officer for Addus Healthcare, Inc., which
10 provided healthcare to about 6,000 inmates in eight facilities throughout New Mexico. (Doc.
11 #92, Exh. 29, pp. 9-11.)  She further testified that in that position she worked approximately
12 60 hours per week, oversaw 20-25 health care practitioners, and averaged "a little bit" more
13 than one day per week giving patient care, which did not include critical care or hospital
14 work.  (*Id.*)  In May or June 2004, Dr. McGuire also completed a master's program in
15 medical management, which did not include any patient care.  (*Id.* at 6.)  Beginning "in the
16 middle of 2004," she focused more on developing her own consulting business, worked as
17 an independent contractor primary care physician about two or two to three days a week, and
18 also did bone densitometry work. (*Id.* at 12-13.)  At some point in 2004, Dr. McGuire began
19 spending six to eight hours per week teaching and serving as medical director in the
20 physician's assistant program at the University of St. Francis.  (*Id.* at 13-14; Exh. 36, p.1.)
21 Since 2001, Dr. McGuire has done "not much hospital work" and no critical care work.  (*Id.*
22 at 19.)

23 **IV.     Analysis**

24      The Government seeks summary judgment on the ground that Wright has not
25 produced the competent admissible expert testimony necessary to support a medical
26 malpractice claim.  The Government argues (1) Dr. McGuire is not qualified to testify as a
27 medical malpractice expert witness under A.R.S. § 12-2604, and (2) her opinions are
28 inadmissible under Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharmaceuticals*, 509

- 4 -

1  U.S. 579 (1993), because they lack factual and scientific support and are based on
2  speculation and subjective beliefs.

3  Multiple sources of law govern whether a witness may provide expert testimony
4  regarding medical malpractice claims brought under the FTCA.  In an action arising in
5  Arizona, the witness must be competent under Fed. R. Evid. 601 and meet criteria established
6  by A.R.S. § 12-2604.  Further, the expert witness and proposed opinion testimony must
7  satisfy the requirements of Fed. R. Evid. 702 for expert testimony regarding scientific,
8  technical, or other specialized knowledge.  Moreover, federal procedural rules establish
9  requirements for disclosure and discovery of expert witnesses and their opinions.

10 **A.     A.R.S. § 12-2604 Applies to This Action as a Matter of Law.**

11 Under the FTCA, the United States waives its sovereign immunity against liability in
12 the same manner and to the same extent as a private individual under like circumstances for
13 certain torts of federal employees. 28 U.S.C. §§ 1346(b)(1), 2674; *United States v. Orleans*,
14 425 U.S. 807, 813 (1976).  The FTCA authorizes such actions "under circumstances where
15 the United States, if a private person, would be liable to the claimant in accordance with the
16 law of the place where the act or omission occurred."  28 U.S.C. § 1346(b)(1).  Although
17 state law supplies the substantive law governing FTCA claims, the Federal Rules of Civil
18 Procedure establish the procedural requirements.  *United States v. Yellow Cab Co.*, 340 U.S.
19 543, 553 & n.9 (1951); *Taylor v. United States*, 821 F.2d 1428, 1432 (9th Cir. 1987).

20 Wright's argument that "standards of admissibility of expert testimony in federal court
21 are established by Fed. R. Evid. 702, not by state statutes" correctly states that Rule 702
22 applies to determine the admissibility of Dr. McGuire's testimony, but incorrectly fails to
23 acknowledge Fed. R. Evid. 601's requirement that courts determine the competency of a
24 witness in accordance with state law.  Federal evidentiary rules expressly provide that they
25 apply generally to civil actions and proceedings.  Fed. R. Evid. 1101(b).  Federal courts
26 generally apply federal evidentiary rules in diversity actions, where state law also supplies
27 the rule of decision, except where the evidentiary issue is more substantive than procedural.
28 *Legg v. Chopra*, 286 F.3d 286, 289-90 (6th Cir. 2002) (federal rather than state evidentiary

- 5 -

rules usually apply except where the rules are more substantive than procedural); *Wray v. Gregory*, 61 F.3d 1414, 1417-19 (9th Cir. 1995) (Nevada statutes, not Federal Rules of Evidence, applied to determine admissibility of findings of medical screening panel, which was central feature of Nevada's integrated scheme for handling medical malpractice claims).

Under federal evidentiary rules for civil actions and proceedings "with respect to an element of a claim or defense as to which State law supplies the rule of decision, the competency of a witness shall be determined in accordance with State law." Fed. R. Evid. 601. Under Fed. R. Civ. 601, federal courts apply state witness competency rules in both FTCA and diversity actions. *Trevino v. United States*, 804 F.2d 1512, 1516 (9th Cir. 1986) (FTCA action applying Washington law regarding expert witness competency); *Higgenbottom v. Noreen*, 586 F.2d 719, 722 (9th Cir. 1978) (diversity action applying Oregon law on expert witness competency); *McDowell v. Brown*, 392 F.3d 1283, 1294-95 (11th Cir. 2004) (federal evidentiary rules governed admissibility of expert testimony in diversity action, and Rule 601 required application of state witness competency rules); *Legg*, 286 F.3d at 289-90 (same). Under Arizona law, A.R.S. § 12-2604 establishes the criteria a person must meet to be permitted to give expert testimony on the appropriate standard of practice or care in an action alleging medical malpractice. Therefore, relating to FTCA claims, Fed. R. Evid. 601 requires witness competency to be determined by Arizona law, including A.R.S. § 12-2604. *See Hill v. United States*, 751 F. Supp. 909, 910 (D. Colo. 1990) (state requirement that in medical malpractice actions plaintiffs must file a certificate of review by a licensed physician certifying their claim is made with substantial justification applied in FTCA action); *see also Miville v. Abington Mem'l Hosp.*, 377 F. Supp. 2d 488, 493 (E.D. Pa. 2005) (in diversity action, under Fed. R. Evid. 601, expert witnesses were required to satisfy state statute titled "Expert Qualifications," which was a rule of witness competency rather than a rule of expert qualification).

Further, *Moreland v. Barrette*, 2006 WL 3147651 (D. Ariz. 2006), upon which Wright relies, is not relevant because it addresses only the relationship between state and federal disclosure requirements—not witness competency requirements. *Moreland*, a diversity

action, found there was no conflict between the Federal Rules of Civil Procedure 26 and 37 and A.R.S. § 12-2603, an Arizona statute requiring a medical malpractice claimant to certify whether expert opinion testimony is needed and, if so, to serve a preliminary expert opinion affidavit with the initial disclosures. However, *Moreland* made a passing comment in footnote *dictum* that is plainly incorrect because Rule 26(a)(2) prescribes requirements for disclosing expert testimony and *not* specific qualifications for expert witness opinions:

> The qualifications for experts under § 12-2603 are distinguishable from expert witness qualifications in § 12-2604 for state medical malpractice actions, which require opinions by experts in the same clinical fields and fields of specialty as the defendant and require such experts to have practiced for a majority of their time during the last year in such fields. **A.R.S. § 12-2604 is a good example of a state statute that directly conflicts with Fed. R. Civ. P. 26(a)(2) because the federal rule governs the specific qualifications for expert witness opinions that will be used as evidence in a federal case.** The case cited by Plaintiffs, *Poindexter v. Bonsukan*, 145 F. Supp. 2d 800 ([E.D.] Tex. 2001) dealt with such a conflict.

*Moreland v. Barrette*, 2006 WL 3147651 at *5 n.3 (D. Ariz. Oct. 31, 2006) (emphasis added). Fed. R. Civ. P. 26(a)(2) does not establish qualification *criteria* for expert witnesses; it defines only what a party must *disclose* about expert witnesses, including "the witness's qualifications, including a list of all publications authored in the previous ten years." *Poindexter v. Bonsukan*, cited by both Wright and *Moreland*, ruled that the Texas statutory mandatory requirements for the timing and content of medical malpractice expert witness disclosures impermissibly conflicted with the judicial discretion provided by Fed. R. Civ. P. 26(a)(2) and 37. 145 F. Supp. 2d 800, 808 (E.D. Tex. 2001). Here, there is no conflict between A.R.S. § 12-2604 and federal disclosure requirements because A.R.S. § 12-2604 does not address disclosure whatsoever.

The court finds, therefore, that Dr. McGuire may not give expert witness testimony on the appropriate standard of practice or care if she does not meet A.R.S. § 12-2604's criteria.

**B.   Wright's Expert, Dr. McGuire, Cannot Give Expert Testimony on the Appropriate Standard of Practice or Care Because She Does Not Meet A.R.S. § 12-2604 Criteria.**

Under A.R.S. § 12-2604(A), the court must exclude expert witness testimony in certain circumstances. The statute provides that "a person shall not give expert testimony on the appropriate standard of practice or care" in an action alleging medical malpractice unless the person is licensed as a health professional in Arizona or another state and the person meets certain criteria. To avoid exclusion, Wright must show that Dr. McGuire:

1. (a) Specialized in October 2004 in the same specialty as the party against whom the testimony is offered if the party against whom the testimony is offered is or claims to be a specialist and (b) is board certified in that specialty if the party against whom the testimony is offered is or claims to be a board certified specialist.

2. Devoted a majority of her professional time during the year immediately preceding October 2004 to either or both (a) the active clinical practice of the same health profession as the defendant and the same specialty, if any; (b) instruction of students in the same health profession as the defendant in the same specialty, if any, as the defendant.

3. If the defendant is a general practitioner, devoted a majority of her professional time in the year preceding October 2004 to either or both (a) active clinical practice as a general practitioner; (b) instruction of students in the same health profession as the defendant.

*See* A.R.S. § 12-2604(A). The parties do not dispute that Dr. McGuire is licensed as a health professional in another state. The parties also do not dispute that in October 2004 Dr. McGuire specialized and was board certified in internal medicine and no other specialty.

Further, the parties do not dispute the facts regarding how Dr. McGuire spent her professional time in the year immediately preceding October 2004. From October 2003 through May or June 2004, Dr. McGuire worked approximately 60 hours a week and devoted slightly more than one day per week to patient care and an undetermined amount of time to

overseeing 20-25 practitioners of different health care professions in eight prison facilities.[1] Dr. McGuire did not testify that her clinical practice during those eight or nine months was in the specialty of internal medicine. From "the middle of 2004" through September 2004, Dr. McGuire worked two or two-to-three days per week as a primary care physician, did bone densitometry work, spent six to eight hours per week teaching and serving as a medical director in a physician's assistant program, and managed her consulting business.

The undisputed facts show that for the first eight or nine months of the relevant period Dr. McGuire devoted considerably less than a majority of her professional time to active clinical practice, and the evidence does not establish how much, if any, of that time was devoted to practice in the specialty of internal medicine. The undisputed facts further show for the final months of the relevant period Dr. McGuire devoted less than a majority of her professional time to active clinical practice and teaching in an accredited health professional school, and her clinical practice was as a primary care physician. Therefore, Dr. McGuire cannot meet the criteria established in A.R.S. § 12-2604(A) regardless of how the statute's reference to "the defendant" is interpreted.

The FTCA permits Wright to sue the United States for injury caused by the negligent act or omission of "any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). Although the United States is the only named defendant, Wright's complaint does not allege that the United States committed negligent acts and omissions, but rather that "the persons whose acts and omissions are the subject of this action were employees of the [Hospital], an agency of defendant, or were persons acting on behalf of the [Hospital] in an official capacity in the service of the United States." (Doc. #35, ¶ 7.) Wright further alleges that if any of the Hospital staff members whose acts and omissions are the subject of this action were not United States employees, the United States is liable for their negligence under the doctrines of ostensible agency and

---

[1] Wright has not argued and Dr. McGuire did not testify that her overseeing of other physicians, physician's assistants, nurse practitioners, dental staff, pharmacists, and indirectly psychiatry staff constituted "active clinical practice." (*See* Doc. #92, Exh. 29, p.9.)

- 9 -

nondelegable duty. (*Id.* at ¶ 8.) Therefore, A.R.S. § 12-2604's reference to "a party against whom the testimony is offered" and "the defendant" applies to the federal employees she alleges committed negligent acts and omissions, and the qualifications needed to testify against each of the employees depends on each employee's profession, specialty, and board certification.

Wright argues that the employees alleged to have performed negligent acts or omissions are practitioners in the field of internal medicine or were performing a task, *e.g.*, intubation, that is commonly performed by internal medicine specialists. She then concludes that Dr. McGuire, a board certified internal medicine specialist, must be qualified under A.R.S. § 12-2604 to testify regarding the appropriate standard of care against all of the employees alleged to have performed negligent acts or omissions even though some are specialists in fields other than internal medicine. The plain language of the statute, however, clearly requires that if the defendant is a specialist, Dr. McGuire must be a specialist in the same specialty and have devoted a majority of her professional time for a year in the active clinical practice "of the same health profession" and in the same specialty.[2] Wright has cited no authority or reasoning upon which the court may deviate from applying the statute as written.

The court finds, therefore, that A.R.S. § 12-2604 prohibits Dr. McGuire from giving expert testimony on the appropriate standard of practice or care because she does not meet statutory criteria regarding the amount of time devoted to active clinical practice in the same health profession and specialty as the Government employees alleged to have committed negligent acts or omissions.

**C.     Wright's Expert's Opinions Are Inadmissible Under Fed. R. Evid. 702.**

The Government also contends the court should exclude Dr. McGuire's expert testimony because her opinions are inadmissible under Fed. R. Evid. 702. The Government

---

[2]     Wright has not argued that Dr. McGuire is qualified as a general practitioner to testify against any of the Hospital employees.

- 10 -

1 argues her testimony ignores facts in the record contrary to her opinions, speculates, and fails
2 to support her opinions with a sound scientific basis. Fed. R. Evid. 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The expert's testimony must be based on knowledge, not mere subjective belief or unsupported speculation. *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 590 (1993).

As decided above, all of the Government's 304 paragraphs of factual assertions are deemed admitted. Based on those facts, the court finds Dr. McGuire's opinions regarding each of Wright's claims inadmissible under Fed. R. Evid. 702:

Count 1 (Negligent Catheterization): Dr. McGuire speculated that the catheter was improperly placed instead of becoming dislodged or blocked, and she provided no scientific support for her conclusion that the four-hour retention of 700 ccs of urine would lead to fluid overload, pulmonary edema, and respiratory failure. (*See* Doc. #92, Exh. 41, pp. 8-9.)

Count 2 (Negligent Fluid Management): Dr. McGuire provided no scientific support for her conclusion that Wood became "total body fluid overloaded" by October 11, 2004, incorrectly calculated excess fluid by subtracting only the measured fluid output from fluid input when the records show not all of Wood's output was measured, failed to explain recorded symptoms that Wood actually was dehydrated, and did not identify any factual basis for concluding any Hospital staff violated the standard of care regarding Wood's fluid management. (*See* Doc. #92, Exh. 41, p. 7.)

Count 3 (Negligent Intubation): Dr. McGuire opined "initial intubation attempts failed, resulting in oropharyngeal trauma, emesis, aspiration and prolonged hypoxia" and did not identify any breach of the standard of care for intubation. (Doc. #92, Exh. 41, p. 4.) She merely speculated that the intubation could have been avoided by proper fluid management, or if it had been done with adequate time for planning and preparation, it could have been

1 performed by the physicians most skilled in intubation, which was necessary for "an obese 2 patient with known cervical spine degenerative arthritis." (*Id.* at p. 8.) Her opinion that 3 Wood experienced prolonged hypoxia over the entire 45-minute period of the intubation 4 attempts is contrary to the record showing Wood's oxygen level fell below 90 percent only 5 twice during the intubation. (Doc. #92, Exh. 29, pp. 79, 81.)

6 <u>Count 4 (Negligent Failure to Institute Proper Therapy)</u>: Dr. McGuire opined that the 7 withholding of acyclovir and steroids to treat possible encephalitis contributed to Wood's 8 neurological decline, chance of recovery, and delayed recovery even though none of Wood's 9 test results ever indicated she had encephalitis or any condition that would have improved 10 by treatment with acyclovir and/or steroids. (Doc. #92, Exh. 41, p. 9; Doc. #92, Exh. 29, pp. 11 88-89, 91-92.)

12 <u>Count 5 (Negligent Supervision of Trainees)</u>:  Dr. McGuire provided no factual or 13 scientific support for her conclusion that on October 9-11, 2004, "the lack of appropriate and 14 timely clinical supervision of physician residents and interns contributed to the failure of the 15 physician staff to recognize and treat the fluid input/output imbalance, that lead [sic] to Ms. 16 Wood's pulmonary edema and respiratory failure" in the early morning of October 14, 2004. 17 (Doc. # 92, Exh. 41, p. 9.)   Dr. McGuire's conclusion merely speculates that an attending 18 physician would or could have provided treatment on October 9-11 to prevent the intubation 19 on October 14 and disregards the fact that Wood's symptoms did not worsen until the 20 evening of October 11, shortly before she was transferred to ICU.  She also disregards the 21 fact that an attending physician examined Wood in ICU on October 12 and his supervision 22 did not prevent the intubation on October 14. (Doc. #90, ¶¶ 118-119.)

23 The court, therefore, finds Dr. McGuire's expert opinion testimony inadmissible under 24 Fed. R. Evid. 702 because it fails to address facts in the record contrary to her opinion, 25 speculates, and does not provide a sound scientific basis for her opinions.

26 **D.    The Government Is Entitled to Summary Judgment.**

27 The court should grant summary judgment if the pleadings, discovery and disclosure 28 materials on file, and any affidavits show there is no genuine issue as to any material fact and

- 12 -

1 that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "If the plaintiff is unable to sufficiently adduce evidence that could lead a reasonable jury to conclude that the plaintiff has satisfied his burden of proof, his claim is subject to an unfavorable summary disposition." *Eisenberg v. Insurance Co. of North America*, 815 F.2d 1285, 1288-89 (9th Cir. 1987).

Arizona substantive law governs this FTCA action based on acts alleged to have occurred in Arizona. *See* 28 U.S.C. § 1346(b)(1). Under Arizona law, to prove that Wood's injury resulted from the failure of a health care provider to follow the accepted standard of care, Wright must prove the following:

> 1. The health care provider failed to exercise that degree of care, skill and learning expected of a reasonable, prudent health care provider in the profession or class to which he belongs within the state acting in the same or similar circumstances.
>
> 2. Such failure was a proximate cause of the injury.

A.R.S. § 12-563. A plaintiff in a medical malpractice lawsuit must use medical expert testimony to prove whether a health care provider breached a duty by falling below the accepted standard of care and the connection between the breach and the ultimate injury except where the negligence is readily apparent to a layman. *Barrett v. Harris*, 207 Ariz. 374, 378, ¶ 12, 380, ¶ 20, 86 P.3d 954, 958, 960 (App. 2004); *Peacock v. Samaritan Health Serv.*, 159 Ariz. 123, 126, 765 P.2d 525, 528 (App. 1988). Wright does not contend that the alleged breach of duty and connection between the breach and ultimate injury here is readily apparent to a layman.

Without a witness to give expert testimony on the standard of care or to prove breach of duty and causation, Wright is unable to sufficiently adduce evidence that could lead a reasonable trier of fact to conclude that she has satisfied her burden of proof on her four claims that Government employees committed negligent acts or omissions. For an employer to be held liable for negligent supervision of an employee, a court must first find the employee committed a tort. *Kuehn v. Stanley*, 208 Ariz. 124, 130, 91 P.3d 346, 352 (App.

2004). Thus, because Wright cannot prove the Government's employees committed medical negligence, she also cannot prevail on her count of negligent supervision.

**V.     Conclusion**

Under the FTCA and Fed. R. Evid. 601, Arizona law governs the merits of this medical malpractice case and the requirements for expert witness competency. Under A.R.S. § 12-2604, Wright's expert witness is not competent to provide expert testimony regarding standard of care. Further, the opinions of Wright's expert witness are inadmissible under Fed. R. Evid. 702. The Government is entitled to summary judgment because as a matter of law Wright cannot prove essential elements of a medical malpractice case without an expert witness.

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment (Doc. # 89) is GRANTED.

IT IS FURTHER ORDERED that the Clerk of the Court enter judgment in favor of Defendant and that Plaintiff take nothing on her complaint. The Clerk shall terminate this action.

DATED this 25th day of March, 2008.

_____
Neil V. Wake
United States District Judge